UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:07cr277

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| DAVID WILLIS | ) | |
| | ) | |

**THIS MATTER** is before the Court upon motions of the defendant for a new trial (Doc. No. 43, 47) and the government's responses (Doc. No. 45, 48). For the reasons stated below, the Court finds that the defendant has failed to carry his burden under Fed. R. Crim. P. 33 and denies the motions.

I.    BACKGROUND

On April 24, 2008, following a two-day trial, a jury convicted the defendant of solicitation to commit murder and using a facility in interstate commerce with the intent that murder-for-hire be committed. (Doc. No. 42). The defendant alleges that the grand jury's indictment and the trial jury's verdict were the result of the government's failure to correct perjured testimony by Randy Parker.

Parker met the defendant through their work for the United States Postal Service. (Doc. No. 44: Tr. at 4). The defendant first mentioned killing his ex-wife to Parker in a conversation at a Roses department store parking lot in September 2007. (Tr. at 8-9, 64). Shortly afterward, Parker contacted the FBI agent responsible for the prosecution of Parker's son. (Doc. No. 12). The FBI recorded subsequent conversations between Parker and the defendant in which the defendant made plans with Parker to hire a hit-man to kill his ex-wife and described his own

alternative plan to poison her with lemonade spiked with anti-freeze. (See Gov't Trial Ex. 8, 9, 10, 11, 12).

During Parker's cross-examination, counsel for the defendant questioned him about his grand jury testimony relating to the meeting at Roses. Parker admitted that he lied to the grand jury about purchasing a presumably automatic rifle from the defendant for $550. (Tr. at 47-48). Parker clarified that he panicked when he realized he did not have a good explanation about why he received the gun from the defendant. (Tr. at 49, 85-86). Parker also admitted that a letter he wrote to the government on December 4, 2007 (Def. Trial Ex. 7) in which he described receiving the rifle was half true. (Tr. at 50). Parker testified that after the defendant was arrested, Parker's wife told him that the defendant at one time suggested to her that she should get rid of Parker. (Tr. at 82). Parker testified that he was not upset because it was over with. (Tr. at 82). Prior to trial, the government had provided the defendant with a letter summarizing a prior statement by Parker that he was upset with the defendant for making a pass at his wife. (Doc. No. 47: Ex. 2). However, counsel for the defendant did not attempt to impeach Parker with the letter. (Tr. at 83).

II.  LEGAL DISCUSSION

On motion of the defendant, a district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33. The government must correct false evidence when it appears, even if it only goes to the credibility of a witness, and a conviction obtained through the knowing use of false evidence by the government must be set aside. Napue v. Illinios, 360 U.S. 264, 269 (1959). "A Napue claim requires a showing of the falsity and materiality of testimony and the prosecutor's knowledge of its falsity. Perjury offered under these circumstances is material if 'there is any reasonable likelihood that the false

testimony could have affected the judgment of the jury.'" Basden v. Lee, 290 F.3d 602, 614 (4th Cir. 2002) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)).

    A.    Grand Jury Testimony

Parker admitted at trial that he lied before the grand jury when he testified that he paid $550 for the rifle he received from the defendant during the meeting at the Roses parking lot. (Doc. No. 44: Tr. at 48). The defendant has failed to produce any evidence that the government was aware of the lie at the time he testified before the grand jury.[1] The defendant has not shown how the false statement about paying for the gun was material to the grand jury's decision to indict the defendant for crimes relating to his plan to kill his ex-wife. There is also no reasonable likelihood that the trial jury's verdict was affected by the false statement. On direct examination, Parker testified about meeting at Roses without referencing the gun. (Tr. at 10-11). On cross-examination, counsel for the defendant elicited testimony about the gun then thoroughly impeached Parker with the false statement before the grand jury. (Tr. at 46-49). Therefore, the Court finds that the defendant is not entitled to relief on his claim that perjured testimony was presented to the grand jury.

    B.    Parker's Feelings Toward the Defendant

Two weeks before the trial, the government notified the defendant that Parker became upset when he learned from his wife that Willis previously "made a pass at her." (Doc. No. 47: Ex. 2). When asked about that situation on cross-examination, Parker responded:

> Let me say this, okay. My wife said she would have never told me until they arrested David Willis. And I'm not upset about that, because it's over with, that David had made the comment to her, the night that I went to the hospital, that

---

[1] When the government became aware of the false statement during trial preparation, it notified the defendant. (Doc. No. 47: Ex. 2).

3

> maybe she should get rid of me. And she said, I wonder what he meant by that
> now. That was the first I ever heard about it. And that's what I told the federal
> agents. You know, I'm wondering what he meant by it, too.

(Tr. at 82). Counsel did not confront Parker with the government's letter, nor did counsel call any of the agents who heard Parker's previous statement. The defendant now complains that the government did not correct Parker's trial testimony. (Doc. No. 47: Supplemental Motion at 2).

It is not clear that Parker's testimony needed to be corrected. Parker's trial testimony focused on the details of what he told the federal agents. The portion of government's letter at issue is a two-sentence summary from the writer's perspective that does not purport to be a transcript of Parker's prior statement. Additionally, Parker's testimony that he was not presently upset is not proven false by the letter's description that he was previously upset. Accordingly, the defendant has not carried his burden to show that the statement was actually false and that the government knew it.[2]

Even if the statement were false and the government knowingly left it uncorrected, there is no reasonable likelihood that the jury's judgment was affected by it. Counsel for the defendant exposed Parker's potential bias in relation to his efforts to lessen his son's federal sentence. (Tr. at 44-45, 66). As detailed above, counsel impeached Parker with false statements to the grand jury and to the government in a letter. Counsel also impeached Parker with a letter he wrote indicating that he thought the defendant was just "blowing off steam" and was less and

---

[2] The defendant claims he was unable to impeach Parker absent calling the prosecutor as a witness. (Doc. No. 47 at 2). However, Parker described what he said to the federal agents. (Tr. at 83). Counsel could have asked Parker for the names of the agents and called them as witnesses. His tactical decision not to does not shift responsibility to the government to further explore the possible contradiction. United States v. O'Keefe, 128 F.3d 885, 894-96 (5th Cir. 1997).

less serious about having his wife killed. (Tr. at 76-77; Def. Trial Ex. 3). One the other hand, substantial evidence, independent of Parker's testimony, supported the jury's verdict. The recorded conversations capture the defendant's intent in his own words to solicit the murder of his ex-wife killed and to use telecommunications for that purpose. Thus, the Court finds that the defendant has failed to establish that the alleged false trial testimony was material.

III. CONCLUSION

Based on the foregoing, the Court finds that the defendant has not shown a <u>Napue</u> violation and that a new trial is not required in the interest of justice.

**IT IS, THEREFORE, ORDERED** that the defendant's motions for a new trial (Doc. No. 43, 47), are **DENIED.**

Signed: September 15, 2008

Robert J. Conrad, Jr.
Chief United States District Judge