IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-332-RJC

| | |
|---|---|
| DAVID WILLIS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) ORDER |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**THIS MATTER** comes before the Court for an initial review of Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1).

I.  BACKGROUND

In 2007, Petitioner, then a postal employee, was going through protracted litigation over the division of marital property with his ex-wife, also a postal employee. Petitioner informed co-worker Randy Parker of his desire to hire someone to kill his ex-wife so she would not get part of his retirement income. Parker alerted the Federal Bureau of Investigation to Petitioner's plan. With the FBI's assistance, Parker subsequently recorded numerous phone conversations between Petitioner and Parker regarding the killing of Petitioner's ex-wife. At one point in the conversations, Petitioner stated that he wanted to hire someone to shoot his ex-wife while she was on her daily mail route. Petitioner also offered anti-freeze poisoning as an alternative means to murder her. On appeal, the Fourth Circuit recounted some of the statements made by Petitioner to Parker during the recorded conversations:

> At one point, Willis stated:
>
> ["]I already decided it's either her or me, and I'll pop a cap in my own head before I live like this. I can't stand 30 more years at the post office. I need to retire and enjoy life while I can. And I've thought about this and cussed about this and dreamed about this and it's sad, but you know me. I'm as cold hearted as you are.["] (Supplemental Joint Appendix ("S.J.A.") at 13).
>
> During the conversation, Willis said that he would pay the informant to arrange for a hit man. Willis also indicated that he would kill her himself, if the hit man was not available. "I already know how I'd do it," Willis said, describing a plan to spike a drink with antifreeze. (S.J.A. at 15). Willis said he learned about the method from Court TV and would put the antifreeze in a drink left by a woman on his ex-wife's mail route. "Three days later, it doesn't matter where I'm at. She's gonna have stomach pains and get a little funny and they take her to the hospital. She croaks and it hits you, boom, kidney failure." (S.J.A. at 16).
>
> After summarizing his poisoning plan, Willis nevertheless agreed that having someone else murder his ex-wife "would be the best way." (S.J.A. at 17). Willis asked if he could trust the hit man "to get the job done," but declined to meet him, stating "I don't want anything to do with it if I can help it. If not, I'm gonna do it myself. She's gonna drink some antifreeze. See I've got old antifreeze that's old ... I tasted it myself; it is as sweet as cherry juice." (Id.).

United States v. Willis, No. 08-4998, 2010 WL 1500525, at *1 (4th Cir. Apr. 15, 2010).

On December 3, 2007, Petitioner was indicted for soliciting murder using a facility of interstate commerce and promising payment, in violation of 18 U.S.C. § 373, and using a facility of interstate commerce with the intent that murder-for-hire be committed, in violation of 18 U.S.C. § 1958. (See Case No. 3:07cr277, Doc. No. 5: Indictment). After trial, a jury convicted Petitioner of both charges. (Id., Doc. No. 42: Verdict). The trial court subsequently sentenced Petitioner to 210 months' imprisonment. (Id., Doc. No. 57: Judgment).

Petitioner appealed, raising the following three assignments of error: (1) the district court committed plain error by failing to instruct the jury on entrapment; (2) the district court erred by not granting Petitioner a new trial based on allegedly false testimony from a Government witness; and (3) the district court imposed a procedurally unreasonable sentence. (Id., Doc. No.

71: Opinion). On April 15, 2010, the Fourth Circuit issued an unpublished opinion affirming Petitioner's conviction and sentence. (Id.). On September 8, 2010, the Fourth Circuit issued its mandate. (Id., Doc. No. 73).

On July 11, 2011, Petitioner timely filed the instant Motion to Vacate raising the following six claims: (1) Congress did not have the authority to enact 18 U.S.C. § 1958 in its present form; (2) Congress was without authority to change the mode of proceeding in front of federal grand juries through legislative enactment; (3) Congress was without authority to change the meaning of Trial by jury; (4) Congress was without authority to enact statutes allowing those with an interest in the outcome of litigation to testify; (5) Petitioner was denied Due Process by the Government's refusal to "Play by its own Rules," the shifting testimony of the Government's star witness that should have been barred by Judicial Estoppel, and shoddy defense lawyering; and (6) Petitioner is factually innocent of the crime(s) charged.(Doc. No. 1).

II.     STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether a petitioner is entitled to any relief. When it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that a petitioner is not entitled to any relief on his claims, a court must dismiss the motion. After reviewing Petitioner's Motion to Vacate and the pertinent record evidence, the Court finds that the record conclusively shows that Petitioner is not entitled to any relief on his claims.

III.   DISCUSSION

   A.   Ground One

Petitioner contends that 18 U.S.C. § 1958, the federal murder-for-hire statute, is unconstitutional on its face and as applied to him because it violates the Commerce Clause and the Tenth Amendment to the U.S. Constitution. Specifically, Petitioner notes that in 2004 Congress amended the statute to make clear that a defendant could be convicted under the statute even if no phone calls between himself and a third party crossed state lines as long as the telephone system itself was a "facility of interstate commerce."[1] Petitioner contends that the current form of 18 U.S.C. § 1958 is unconstitutional on its face because it does not require phone calls to cross state lines and that the statute is unconstitutional as applied to him because the phone calls he made to a third party did not cross state lines.

Petitioner did not raise this claim on direct appeal from his conviction and sentence. Therefore, Petitioner may not raise this issue for the first time on collateral review without showing both "cause" for his procedural default and "actual prejudice" resulting from the error.

---

[1] Under 18 U.S.C. § 1958,

> Whoever ... uses ... any facility of interstate or foreign commerce, with intent that a murder be committed in violation of the laws of any State or the United States as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value ... shall be imprisoned.

18 U.S.C. § 1958(a) (emphasis added). A "facility of interstate or foreign commerce includes means of transportation and communication." 18 U.S.C. § 1958(b). Courts have held that, under 18 U.S.C. § 1958 as it is currently written, "[t]he telephone system is clearly a 'facility of interstate . . . commerce' [under 18 U.S.C. § 1958(b) ]," United States v. Covington, 565 F.3d 1336, 1343 (11th Cir. 2009), and the phone is an instrumentality of interstate commerce even when used solely intrastate, United States v. Faris, 583 F.3d 756, 759 (11th Cir. 2009).

Petitioner has shown neither cause nor prejudice for his procedural default.[2] Thus, this claim must be dismissed on this basis alone.

Even if the Court were to reach the merits, Petitioner's argument fails. He has made no showing that 18 U.S.C. § 1958 is unconstitutional. Indeed, the circuits that have thus far addressed the constitutionality of 18 U.S.C. § 1958 in its current form have held that the statute falls within Congress's Commerce Clause power. See, e.g., United States v. Mandel, 647 F.3d 710 (7th Cir. 2011); United States v. Nowak, 370 F. App'x 39 (11th Cir. 2010) (unpublished); United States v. McGriff, 287 F. App'x 916 (2d Cir. 2008) (unpublished).

B. Ground Two

Next, Petitioner contends that Congress was without authority to change the mode of proceeding in front of grand juries though legislative enactment. More specifically, in his supporting memorandum, Petitioner contends that Rule 6(d) of the Federal Rules of Criminal Procedure and 28 U.S.C. § 515(a) are unconstitutional because, by expressly allowing government attorneys to be present when the grand jury is in session, both the rule and the statute unconstitutionally alter the mode of grand jury proceedings as they were originally created when the Bill of Rights was enacted.[3]

---

[2] In Ground Six, Petitioner contends that he is actually innocent of the crimes for which he was convicted. Actual innocence may be used to avoid procedural default for failing to bring certain claims on direct appeal. United States v. Mikalajunas, 186 F.3d 490, 493 (4th Cir. 1999). Petitioner does not contend, however, that his actual innocence constitutes cause to avoid procedural default as to several of his grounds for relief here. In any event, as the court discusses, infra, Petitioner's grounds for relief are all without merit.

[3] Rule 6(d)(1) of the Federal Rules of Criminal Procedure provides that "the following persons may be present while the grand jury is in session: attorneys for the government, the witness being questioned, interpreters when needed, and a court reporter or an operator of a recording device." FED. R. CRIM. P. 6(d)(1). 28 U.S.C. § 515 states in relevant part:

> The Attorney General or any other officer of the Department of Justice, or any attorney specially appointed by the Attorney General under law, may, when specifically directed

5

Petitioner's contention is without merit. As with his first ground for relief, Petitioner may not raise this issue for the first time on collateral review without showing both cause and prejudice for his procedural default in not raising this claim on direct appeal. Petitioner has shown neither cause nor prejudice for his procedural default. Additionally, he has not shown how the presence of government attorneys during grand jury proceedings violates the Constitution. Therefore, this claim must be dismissed.

C. Grounds Three, Four, and Five

Grounds Three, Four, and Five rest on Petitioner's belief that Parker committed perjury during the trial. As noted above, Petitioner asserted claims of perjury on direct appeal, which the Fourth Circuit resolved against him. Issues previously decided on direct appeal cannot be recast in the form of a § 2255 motion in the absence of a favorable, intervening change in the law. Davis v. United States, 417 U.S. 333, 342 (1974); Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under Section 2255.").

Specifically, Petitioner's third and fourth grounds that Congress was without authority to change the meaning of trial by jury by allowing those with an interest in the outcome of proceedings to testify. Parker was cross-examined on his alleged bias and the jury was free to accept or reject his testimony. Petitioner did not raise this claim on direct appeal from his conviction and sentence, and he has shown neither cause nor prejudice for his procedural default.

---

by the Attorney General, conduct any kind of legal proceeding, civil or criminal, including grand jury proceedings and proceedings before committing magistrate judges, which United States attorneys are authorized by law to conduct, whether or not he is a resident of the district in which the proceeding is brought.

Id. § 515(a).

6

Furthermore, Petitioner simply has not presented any admissible evidence showing that Parker perjured himself at Petitioner's trial. Ground Five faults counsel for not blocking Parker's alleged perjured testimony through arguing judicial estoppel. This re-casting of the perjury issue is barred by the Fourth Circuit's decision on direct appeal. Accordingly, the record plainly shows Petitioner is not entitled to relief on these claims.

  D.  Ground Six

Finally, Petitioner contends that he is actually innocent of the crimes for which he was convicted. In support of his claim, Petitioner contends that Parker "engineered the entire 'crime' in order to obtain a more favorable sentence for his son [who was in federal prison], even to the point of making unmonitored phone calls to this Petitioner in order to maintain the charade." (Doc. No. 1: Memorandum at 33). Petitioner further contends that he was merely "role playing" with Parker and that Petitioner never actually intended to hire anyone to kill his wife. (Id.). To succeed on an actual innocence claim, a petitioner must show factual innocence, not simply legal insufficiency of the evidence to support a conviction. See Bousley v. United States, 523 U.S. 614, 623 (1998). A petitioner must establish that "'in light of all the evidence,'" "it is more likely than not that no reasonable juror would have convicted him." Id.

Here, the tape recorded conversations between Parker and Petitioner were before the jury, and it was the province of the jury to ascertain Petitioner's intent from all the evidence in the case. That substantial record plainly weighs against a finding that no reasonable juror would have convicted him. Therefore, his claim of actual innocence is without merit.

IV.  CONCLUSION

The Court's initial review of Petitioner's Motion to Vacate and the relevant record evidence conclusively shows that Petitioner is not entitled to relief on any of his claims.

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate (Doc. No. 1) is **DENIED** and **DISMISSED**.

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, petitioner must establish both that dispositive procedural ruling is debatable, and that petition states a debatable claim of the denial of a constitutional right).

Signed: January 23, 2012

Robert J. Conrad, Jr.
Chief United States District Judge